14-2078

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER
FOR COOPERATIVE BANK,

*Plaintiff-Appellant,*

v.

RICHARD ALLEN RIPPY; JAMES D. HUNDLEY; FRANCES PETER
FENSEL, JR.; HORACE THOMPSON KING, III; FREDRICK WILLETTS, III;
DICKSON B. BRIDGER; PAUL G. BURTON; OTTIS RICHARD WRIGHT,
JR.; OTTO C. BUDDY BURRELL, JR.,

*Defendants-Appellees.*

On Appeal From The United States District Court For The Eastern District Of North
Carolina in Case No. 7:11-cv-00165-BO

## UNSEALED PRINCIPAL BRIEF FOR APPELLANT FDIC-RECEIVER

COLLEEN J. BOLES
Assistant General Counsel
KATHRYN R. NORCROSS
Senior Counsel
JAMES SCOTT WATSON
Counsel
STEVEN C. MORRISON
Counsel

MARY L. WOLFF
DOUGLAS A. BLACK
Wolff Ardis, P.C.
5810 Shelby Oaks Drive
Memphis, Tennessee 38134
(901) 763-3336

FEDERAL DEPOSIT INSURANCE CORPORATION
3501 Fairfax Drive, VS-D7008
Arlington, VA 22226-3500
(703) 562-2384
jamwatson@fdic.gov

*Counsel for the Federal Deposit Insurance Corporation*

Date: December 17, 2014

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and Local Rule 26.1, the Federal Deposit Insurance

Corporation as Receiver for Cooperative Bank ("FDIC-Receiver"), who is

Appellant, makes the following disclosures:

(1) Is the party a publicly held corporation or other publicly held company?  NO.

(2) Does FDIC-Receiver have any parent corporations?  NO.

(3) Is 10% or more of the stock of the FDIC-Receiver owned by a publicly held corporation or other publicly held entity?  NO.

(4) Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  NO.

(5) Is the FDIC-Receiver a trade association?  NO.

(6) Does this case arise out of a bankruptcy proceeding?  NO.


**Signed:**    /s/ James Scott Watson        **Date:** December 17, 2014

Counsel for the Federal Deposit Insurance Corporation as Receiver for Cooperative Bank, Appellant

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF JURISDICTION ...................................................... 1

STATEMENT OF THE ISSUES ......................................................... 1

STATEMENT OF THE CASE ............................................................ 3

    Nature of the Case ..................................................................... 3

    Statement of Facts ..................................................................... 6

       1.     The Bank and Its Plan for Growth ............................. 6

       2.     The D&Os Were Warned of Deficient and Improper Underwriting and Lending Practices in 2006 ............................ 9

       3.     Notwithstanding the Explicit Warnings And Their Own Recognition of Problems In the Real-Estate Market, the D&Os Did Not Change Their Practices. ................................... 16

           A. The Lot Loans Were Made With Flawed Underwriting and Credit Analysis. ................................................................. 17

           B. Commercial Loans Were Made With the Same Flawed Underwriting and Credit Analysis. ......................................... 21

    Course of Proceedings ................................................................ 25

SUMMARY OF ARGUMENT ........................................................... 29

ARGUMENT ................................................................................ 33

    I.     Standard of Review ................................................................ 33

II.   The District Court Erred by Entering Summary Judgment Because A Reasonable Juror Could Conclude From the Evidence That The Loan Approval Process Was Not Protected By The Business-Judgment Rule . 33

  A.   Directors and Officers May Be Held Personally Liable for Negligence Under Federal and North Carolina Law. ........................................... 33

  B.   The FDIC-Receiver Presented Evidence Creating a Genuine Issue of Fact Whether the D&Os Acted in Good Faith or Adequately Informed Themselves About the Loss Loans They Approved. .......................... 43

  C.   The District Court Erred By Determining That Regulatory Examination Ratings And General Comments From the Consultant Rendered the D&Os' Process Rational As A Matter of Law .............. 46

III.  Summary Judgment Was Improper Where A Reasonable Juror Could Conclude From the Evidence That The D&Os were Grossly Negligent. 49

  A.   Gross Negligence in North Carolina Does Not Require Intentional Wrongdoing ................................................................. 49

  B.   Summary Judgment Must Be Reversed Because the FDIC-Receiver Adduced Facts From Which A Reasonable Juror Could Conclude the D&Os Were Grossly Negligent ............................................... 53

IV.   The D&Os' Other Arguments For Summary Judgment Also Fail Because Disputed Issues of Fact Remain. ........................................... 54

  A.   The "Elimination of Liability" Clauses Do Not Support Summary Judgment. ................................................................................... 54

  B.   Because Summary Judgment Was Improper, the FDIC-Receiver's Motions for Partial Summary Judgment and to Strike Are Not Moot .......................................................................................... 58

CONCLUSION ............................................................................................ 58

STATEMENT REGARDING ORAL ARGUMENT ........................................... 59

RULE 32(a)(7)(C) CERTIFICATE OF COMPLIANCE ..................................... 61

CERTIFICATE OF SERVICE................................................................. 63

# TABLE OF AUTHORITIES

**CASES**                                                          **PAGE(S)**

<u>Federal</u>

*Anderson v. Liberty Lobby,*
    477 U.S. 242 (1986)..............................................................33

*Atherton v. FDIC,*
    519 U.S. 213 (1997).......................................................... *passim*

*Doe v. Doe,*
    973 F.2d 237 (4th Cir. 1992) ............................................35

*FDIC v. Bernstein,*
    944 F.2d 101 (2d Cir. 1991) .............................................. 9

*FDIC v. Canfield,*
    967 F.2d 443 (10th Cir. 1992) ..........................................35

*FDIC v. Giannoulias*
    918 F. Supp.2d 768 (N.D. Ill. 2013)..................................53

*FDIC v. Gravee,*
    966 F. Supp.622 (N.D. Ill. 1997)......................................35

*FDIC v. La Rambla Shopping Ctr., Inc.,*
    791 F.2d 215 (1st Cir. 1986) ............................................. 9

*FDIC v. Skow,*
    741 F.3d 1342 (11th Cir. 2013) ........................................35

*FDIC v. Stahl,*
    89 F.3d 1510 (11th Cir. 1996) ..............................38, 39, 40

*FDIC v. Willetts,*
    882 F. Supp.2d 859 (E.D.N.C. 2012) ...................... *passim*

*Hill v. Lockheed Martin Logistics Mgmt., Inc.,*
    354 F.3d 277 (4th Cir. 2004) ........................................................ 33

*Hoye v. Meek,*
    795 F.2d 893 (10th Cir. 1986) ............................................... 39, 40

*Martin v. Volkswagen of America, Inc.,*
    707 F.2d 823 (4th Cir. 1983) ..................................................... 52

*McNair v. Lend Lease Trucks, Inc.,*
    95 F.3d 325 (4th Cir. 1996) ........................................................ 35

*Merritt v. Old Dominion Freight Line, Inc.*
    601 F.3d 289 (4th Cir. 2010) ..................................................... 46

*Okoli v. City of Baltimore,*
    648 F.3d 216 (4th Cir. 2011) ..................................................... 33

*RTC v. Bernard,*
    1995 WL 17164886 (M.D.N.C. 1995) ............................... 38, 39, 40

*RTC v. Heiserman,*
    839 F. Supp. 1457 (D. Colo. 1993) ............................................. 39

*Solis v. Malkani,*
    638 F.3d 269 (4th Cir. 2011) ..................................................... 33

*Sylvia Development Corp. v. Calvert City,*
    48 F.3d 810 (4th Cir. 1995) ........................................................ 49

*Town of Nag's Head v. Toloczko,*
    728 F.3d 391 (4th Cir. 2013) ..................................................... 35

*Trigo v. FDIC,*
    847 F.2d 1499 (11th Cir. 1988) .................................................... 9

*Tuck v. Henkel Corp.,*
    973 F.2d 371 (4th Cir. 1992) ................................................ 48, 49

*Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co.,*
    433 F.3d 365 (4th Cir. 2005) ........................................................ 35

*United States v. Perrin,*
    45 F.3d 869 (4th Cir. 1995) .......................................................... 33

State

*Alford v. Shaw,*
    349 S.E.2d 41 (N.C. 1986) ........................................................... 37

*Blythe v. Bell,*
    2013 N.C.B.C. 7, 2013 WL 440701 (N.C. Super. 2013) ............... 41

*Clayton v. Branson,*
    570 S.E.2d 253 (N.C. App. 2002) ................................................. 49

*Embree Const. Group v. Rafcor, Inc.,*
    411 S.E.2d 916 (N.C. 1992) .......................................... 42, 43, 45

*FDIC v. Loudermilk,*
    761 S.E.2d 332 (Ga. 2014) ..................................................... 38, 40

*FDIC v. Skow,*
    763 S.E.2d 879 (Ga. 2014) ........................................................... 38

*Gordon v. Pendleton,*
    162 S.E.2d 546 (N.C. 1932) ......................................................... 36

*Green v. Condra,*
    2009 N.C.B.C. 21, 2009 WL 2488930 (N.C. Super. 2009) .......... 37

*Greene v. City of Greenville,*
   736 S.E.2d 833 (N.C. App. 2013) ............................................... 51, 52

*In re Caremark Int'l Inc. Derivative Litig.,*
   698 A.2d 959 (D.Ch. 1996) ............................................... 40

*In re Walt Disney Co. Derivative Litigation,*
   825 A.2d 275 (Del.Ch. 2003) ............................................... 42, 43, 46

*Johnson v. Lockman,*
   254 S.E.2d 187 (N.C. 1979) ............................................... 58

*Jones v. City of Durham,*
   622 S.E.2d 596 (N.C. 2005), ............................................... 50, 51, 52
   *superseded and withdrawn on other grounds,*
   638 S.E. 2d 202 (N.C. 2006)) ............................................... 50

*Lillian Knitting Mills Co. v. Earle,*
   74 S.E.2d 351 (N.C. 1953) ............................................... 37

*Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP,*
   513 S.E.2d 320 (1999) ............................................... 58

*North Carolina Corp. Comm. V. Hartnett Cnty. Trust Co.,*
   192 N.C. 246 (1926) ............................................... 25, 36

*Olivetti Corp. v. Ames Bus. Sys., Inc.,*
   356 S.E.2d 578 (N.CC. 1987) ............................................... 58

*Parish v. Hill,*
   513 S.E.2d 547 (N.C. 1999) ............................................... 54

*Shields v. Cape Fox Corp.,*
   42 P.3d 1082 (Al. 2002) ............................................... 39

*State v. Custard,*
   2010 N.C.B.C. 6, 2010 WL 1035809 (N.C. Super. 2010) .................... *passim*

*State ex rel. Utilities Commission v. Edmisten,*
   232 S.E.2d 184 (N.C. 1977) ............................................... 41

*Wagoner v. North Carolina R. Co.,*
  77 S.E.2d 701 (N.C. 1953) .................................................................... 54

## STATUTES

12 U.S.C. § 1819(b)(1) ............................................................................ 1

12 U.S.C. § 1821(k) ...................................................................... *passim*

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 1331 ...................................................................................... 1

28 U.S.C. § 1335 ...................................................................................... 1

Ind. Code Ann. § 23-1-35 ...................................................................... 36

Ind. Code Ann. § 28-13-11-5 ................................................................ 36

Me. Rev. Stat. tit. 13-C § 832(1)(B) ..................................................... 36

Me. Rev. Stat. tit. 13-C § 843(3) ........................................................... 36

N.C.G.S. § 55-2-02(b)(3) ........................................................................ 55

N.C.G.S. § 55-8-30 ......................................................................... 25, 56

N.C.G.S. § 55-8-42 ......................................................................... 25, 56

## REGULATIONS

12 C.F.R. § 323.5(b)(1) ......................................................................... 20

## RULES

Fed.R.Civ.P. 56(c) ................................................................................. 33

## OTHER AUTHORITIES

Uniform Financial Institutions Rating System,
   62 Fed. Reg. 752-01 ............................................................... 5

Joint Guidance on Concentrations in Commercial Real Estate Lending,
   71 Fed. Reg. 74580 ................................................................ 7

Russell M. Robinson,
   *Robinson on North Carolina Corporation Law* (7th ed. 2009) .......... 36, 37, 56

## STATEMENT OF JURISDICTION

On August 10, 2011, the FDIC as Receiver for Cooperative Bank ("FDIC-Receiver") filed this lawsuit in the U.S. District Court for the Eastern District of North Carolina, asserting claims of negligence, breach of fiduciary duty, and gross negligence against former directors and officers ("D&Os") of the failed Cooperative Bank. The district court had subject-matter jurisdiction over this case pursuant to 12 U.S.C. §1819(b)(1) and (2), and 28 U.S.C. §§1331 and 1345.

On September 23, 2014, the district court entered a final Judgment (D.E. 126) following a September 11, 2014, order of summary judgment and accompanying memorandum opinion on behalf of the defendants.[1] The summary judgment disposed of all claims against all parties in this lawsuit.

The FDIC-Receiver timely filed a Notice of Appeal on October 2, 2014. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

(1)    Under North Carolina law, the director or officer of a bank is presumed, under the business-judgment rule, to have acted with due care, in good faith, and in the best interests of the bank. Did the district court erroneously conclude that the FDIC-Receiver had failed to overcome this presumption, where the evidence showed, among other things, that the D&Os ████████████████

---

[1] References to the Joint Appendix will be styled "JA __." JA 71.

1

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ (6) failed to act in the best

interests of the Bank, in determining whether to approve the Loss Loans?

      (2)     Did the district court impermissibly draw inferences against the non-

movant FDIC-Receiver by holding that "2" grades on a 2006 bank examination and

general comments in a consultant's report established as a matter of law that the

D&Os' process for approving loans was rational, where the evidence showed that the

████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████, and failed to act in

the best interests of the Bank?

      (3)     Did the district court err by granting summary judgment and dismissing

the FDIC-Receiver's claims of gross negligence because the FDIC-Receiver failed to

provide evidence of intentional misconduct, when proof of intentional misconduct is

not required under North Carolina law?

---

[2] Pursuant to Local Rule 25(c), portions of the brief that "reference" materials filed under seal below must be highlighted and filed under seal with this Court, with highlighted materials redacted from a public brief.

# STATEMENT OF THE CASE

*Nature of the Case*

This is an appeal from an order entering summary judgment in favor of the former directors and officers[3] of the failed Cooperative Bank and against the FDIC as Receiver for the failed bank ("FDIC-Receiver").  The FDIC-Receiver sued the D&Os for negligence, breach of fiduciary duty, and gross negligence in approving loans that led to over $40 million in losses to the failed bank (now borne by the creditors of the receivership).  The suit alleged that the D&Os negligently approved specific loans (described herein as the "Loss Loans"), and that the losses on the Loss Loans were the direct and proximate result of the D&Os' negligence and gross negligence in approving these loans.

FDIC moved for partial summary judgment on certain affirmative defenses, and the D&Os moved for summary judgment on all claims.  As discussed in detail below, the FDIC presented summary-judgment evidence that the D&Os ignored and/or recklessly disregarded warnings from the banking regulators, an independent consultant for the bank, third-party appraisers, and others within the bank, and recklessly disregarded all warnings and approved the Loss Loans as part of an ill-

---

[3] Defendant-appellee Willetts was the President, CEO, and Chairman of the Board of the failed bank.  Defendants-appellees Burton, Hundley. King, Wright, Rippy and Fensel served on the bank's Board of Directors.  Defendants-appellees Bridger and Burrell were officers of the bank who regularly attended parts of the Board meetings.  For the sake of convenience, the director and officer defendants will be referred to collectively as "the D&Os."

conceived plan to increase the assets of the bank. The FDIC also presented

evidence that, among other defects in their process of approving loans, the D&Os

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████

     Notwithstanding this evidence, the district court granted the D&Os summary

judgment. The court held that for claims of ordinary negligence and breach of

fiduciary duty, the D&Os were insulated from their liability by North Carolina's

business-judgment rule because their process for approving the Loss Loans was

rational as a matter of law. On the claim of gross negligence in approving loans, the

district court held that the FDIC-Receiver had failed to produce evidence that the

D&Os engaged in "intentional wrongdoing" or "willful and wanton conduct," and

consequently could not prove gross negligence under North Carolina law.

    The district court was wrong. In concluding *as a matter of law* that the D&O's

employed a "rational process" because the regulators gave the bank and its

management composite "2" ratings, the district court ignored other relevant evidence

4

that, at a minimum, creates issues of material fact regarding the rationality of the D&Os' underwriting and credit-analyzing processes.[4] ███████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████    In holding that the "2" rating rendered "absurd" the FDIC'-Receiver's argument that the process employed was irrational, the district court violated the fundamental tenet that on a motion for summary judgment, all inferences must be drawn for the non-movant.  Without support, the district court effectively created a rule of law that a passing grade on a bank examination renders subsequent loan-approval decisions *rational* — █████████

████████████████████████████████████████████

█████████████████████████████████    The district

---

[4] As discussed below, following a bank examination, the regulators issue a Report of Examination, and provide "CAMELS" ratings. "CAMELS" is an acronym for six primary areas of bank operations that are evaluated by bank examiners: **C**apital, **A**sset Quality, **M**anagement, **E**arnings, **L**iquidity, and **S**ensitivity to Market Risk. Ratings are assigned on a scale of 1 to 5.  Component scores are given for each primary area, and a composite score is assigned for that examination.  *See generally* 62 Fed. Reg. 752-01, Uniform Financial Institutions Rating System.

court compounded its error by holding that a claim of gross negligence under North Carolina law requires proof of intentional or willful and wanton misconduct, contrary to North Carolina law.

The district court erred, and this Court should reverse the order granting the D&Os summary judgment and remand this case for trial.

*Statement of Facts*

### 1.  The Bank and Its Plan for Growth

Cooperative was founded in 1898, operating for over 100 years as a conservative lender focusing primarily on single-family housing ("SFH") loans.  In November 2001, the Bank's Board of Directors ("Board") and Senior Management, which included the D&Os here, implemented a strategic goal to grow Cooperative's assets from $443 million to $1 billion by the end of 2005.[5]  Having not yet achieved this strategic goal within that time, the Board reaffirmed in 2005 the goal to increase the Bank's assets to $1 billion.  But in order to reach that goal, the Bank had to greatly increase its riskier lending.

Defendants' growth strategy was achieved primarily through a rapid increase in high-risk commercial real estate ("CRE") and acquisition, construction & development ("ADC") loans that exceeded the maximum concentrations set forth in the Bank's Loan Policy.  The Bank's *stated* policy of scrutinizing CRE lending was

---

[5] ██████████████████████████████████████████████.

consistent with guidance from federal banking regulators.[6]  This joint guidance explicitly warned that "history has shown [CRE] to have cycles that can, at much lower concentration levels, inflict large losses upon institutions" and recommended heightened risk management by institutions whose total ADC loan concentrations exceeded 100% of capital or whose total CRE loan concentrations exceeded 300% of capital.  It specifically instructed institutions with such loan concentrations to "[e]nsure that management implements procedures and controls to effectively adhere to and monitor compliance with the institution's lending policies and strategies. . . [and review] information that identifies and quantifies the nature and level of risk presented by CRE concentrations."[7]

　　　　The Bank's actual *practice* conflicted with this guidance.  ██████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[6] On December 12, 2006, the Comptroller of the Currency, the Federal Reserve Board and the FDIC issued a joint Guidance on Concentrations in Commercial Real Estate Lending. 71 Fed. Reg. 74,580.
[7] 71 Fed. Reg. at 74,586-7
[8] ██████

████████████████████████████

By late 2008, losses on loans had caused a rapid deterioration in the Bank's capital. In early 2009, regulators notified the Bank that its capital had fallen below acceptable levels, and informed the Bank that under applicable regulations the Bank was required to submit a capital restoration plan. ████████████████████ ████████████████████████████████████ ████████████████████████████████████ ███████████████████████████████████ on June 19, 2009, the North Carolina Office of the Commissioner of Banking ("NCOCOB") declared the Bank insolvent, and appointed the FDIC as its receiver. As a result of the Bank's failure, the FDIC Deposit Insurance Fund suffered losses in excess of $215 million.[11]

The FDIC-Receiver has not sued the D&Os for their poor business judgments, overall mismanagement, or other losses that contributed to the Bank's failure. Rather, after investigation the FDIC-Receiver has sued the D&Os for their negligent and grossly negligent approval of specific loans, resulting in specific, identifiable losses. This lawsuit involves the Loss Loans: 78 "Lot Loans" (individual purchases of residential lots) and 8 commercial loans.

---

[9] ████████████████
[10] ████████████████.
[11] ███████████.

8

## 2. The D&Os Were Warned of Deficient and Improper Underwriting and Lending Practices in 2006

*Bank examiner warnings.* ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████

---

[12] ████████████████████████████████████ As a "state non-member bank," Cooperative's primary federal regulator was FDIC in its corporate capacity, and the NCOCOB regulated the bank as its chartering authority. The term "State nonmember bank" means any State bank which is not a member of the Federal Reserve System. 12 U.S.C. § 1813(e)(2). Because FDIC as insurer/regulator and FDIC-Receiver perform two different functions and protect wholly different interests, courts recognize that they are discrete entities, and have been careful to keep the rights and liabilities of these two entities legally separate. *See, e.g., FDIC v. Bernstein,* 944 F.2d 101, 106 (2d Cir. 1991); *FDIC v. La Rambla Shopping Ctr., Inc.,* 791 F.2d 215, 218–21 (1st Cir. 1986); *Trigo v. FDIC,* 847 F.2d 1499, 1502–03 (11th Cir.1988).

[13]
[14] ████████
[15]

9





---

[22] ██████

[23] ██████ (emphasis added).

[24] *Id.*





27 ███████

28 ███████ (emphasis added).

29 *Id.*

30 ███████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████ (cont.)



(cont.)

[31] *Id.; see also* _____ (_____).
[32] *See, e.g.*

[33] JA _____.



---

[34] *Id.*
[35] *Id.*
[36] JA
[37] *Id.*
[38] JA .
[39] JA



3.  **Notwithstanding the Explicit Warnings And Their Own Recognition of Problems In the Real-Estate Market, the D&Os Did Not Change Their Practices.**

After recognizing problems in the market in March 2007, the Bank approved

77 "Lot Loans" and 8 commercial loans that are the subject of this lawsuit.[45]

---

[40] JA ███████████.
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] JA ██
[45] The FDIC-Receiver has also sued for negligence in reviewing and approving one Lot Loan that was made in January of 2007, bringing the total to 78.

## A. The Lot Loans Were Made With Flawed Underwriting and Credit Analysis.



---

[46] JA ███████.

[47] JA █████████. "Tier 1 capital" is the core measure of a bank's (cont.)



(cont.) financial strength, generally consisting of shareholder's equity and disclosed reserves.





In sum, the Lot Loan program involved loans to individuals who did not satisfy the

---

[54] JA
[55] JA
[56] JA
[57] JA
[58]

minimum criteria for these loans set forth in the Bank's Loan Policy, and whose

ability to repay them was doubtful.



---

[59] See 12 C.F.R. § 323.5(b)(1) ("the appraiser shall be engaged directly by the regulated institution or its agent, and have no direct or indirect interest, financial or otherwise, in the property or the transaction."); *See also* 2003 Independent Appraisal and Evaluation Functions, FDIC FIL-84-2003 ("Individuals independent from the loan production area should oversee the selection of appraisers and individuals providing evaluation services."); 1994 Interagency Appraisal and Evaluation Guidelines, FDIC FIL-74-94, November 11, 1994.

██████████████████████████████████████

████████████████████

### B. Commercial Loans Were Made With the Same Flawed Underwriting and Credit Analysis.

The D&Os also approved significant commercial loans that superficially helped them in their stated goal of becoming a $1 billion bank, but which utterly ignored the warnings of the regulators, the bank's consultants, and the internal warnings raised in ALCO meetings. Without review of any documentation, the D&Os approved loans that required no hard equity, and failed to include a proper analysis of the viability of the project, or of the borrowers' ability to repay the loan at maturity.[61]



---

[60] JA ████████ JA ████████.
[61] JA ████████████



The D&Os demonstrated a wholesale disregard for the Bank's credit policies and guidelines, and in some cases ignored legal lending limits. ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In sum, the D&Os ignored policy

---

[62] JA ▮
[63] JA ▮
[64] JA ▮.
[65] JA ▮.
[66] JA ▮.

violations, regulatory admonitions, warnings from regulators, and prudent lending standards in connection with the Loss Loans.[67]

This disregard was manifest in the commercial loans.[68] █████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

---

[67] JA ████████████████████████.
[68] *Id.*
[69] JA 790.



[70] JA 1189.

[71] JA .

███████████████████████████████

The Bank failed shortly thereafter, and the FDIC-Receiver suffered significant losses on the Loss Loans.

*Course of Proceedings and Disposition Below*

The FDIC-Receiver filed a complaint against the D&Os alleging negligence, breach of fiduciary duty, and gross negligence in the approval of the specific Loss Loans. After FDIC-Receiver filed its complaint, the D&Os moved to dismiss.[73] The district court denied the D&O's motion with respect to all claims, holding among other things that under 12 U.S.C. § 1821(k), the Supreme Court's decision in *Atherton v. FDIC,* and North Carolina law, directors and officers of a North Carolina bank are liable for ordinary negligence, breach of fiduciary duty, and gross negligence.[74] The court held that North Carolina recognizes a business-judgment

---

[72] JA ███████████████. "Financial institutions in [the "5"] group generally exhibit unsafe and unsound practices or conditions. . . . Institutions in this group pose a risk to the deposit insurance fund. Failure is a distinct possibility if the problems and weaknesses are not satisfactorily addressed and resolved." 62 Fed. Reg. 752-01.

[73] D.E. 18; *see FDIC v. Willetts,* 882 F. Supp.2d 859 (E.D.N.C. 2012).

[74] 882 F. Supp.2d at 863-65, *citing inter alia* 12 U.S.C. § 1821(k) ("Section 1821(k)"); *Atherton v. FDIC,* 519 U.S. 213, 227 (1997) (statute creates a floor of gross negligence and permits causes of action for a stricter standard under state law); N.C.Gen.Stat. §§ 55-8-42; 55-8-30 (providing that officers and directors, respectively, owe a duty of care that "an ordinarily prudent person in a like position would exercise under similar circumstances" and providing they "shall not be liable" if they conform to their duties); and *North Carolina Corp. Comm. V. Hartnett Cnty. Trust Co.,* 192 N.C. 246 (1926) (directors and officers liable for either willful *or* (cont.)

rule, but the rule presupposes the exercise of reasonable care, and therefore directors may be liable for ordinary negligence to the extent their negligence falls outside the protections of the rule.[75]  Consequently, it held that dismissal based on the business-judgment rule or "reasonable reliance" was foreclosed because the FDIC-Receiver pled sufficient facts to state claims based on the ordinary negligence of the D&Os.  In denying a motion to reconsider this holding, the district court found "no basis upon which to presume that the North Carolina legislature . . . mirrored the language of the law's ordinary negligence standard so closely when it instead meant to impose only a gross negligence standard[.]"[76]

The district court also denied the D&Os' request to dismiss the claim of gross negligence.  The court cited Section 1821(k), which explicitly provides that the directors and officers of a failed bank "may be held personally liable for monetary damages for . . . gross negligence," and explained that the statute was intended to establish a national "floor" of liability — a minimum standard to apply if state standards instead required proof of greater culpability before liability could be imposed — for gross negligence.  The court noted that under the statute the definition of gross negligence is grounded in state law, but also correctly observed that the plain language of Section 1821(k) indicates that intentional conduct

---

(cont.) negligent failure to perform duties).
[75] 882 F. Supp.2d at 864.
[76] 882 F. Supp.2d at 867.

constitutes a greater disregard for the duty of care than gross negligence.[77] The court further held that the FDIC-Receiver was not required under North Carolina law to show intentional misconduct by the D&Os, nor to show deliberate or conscious action rising to the level of "willful and wanton" conduct. The district court noted that the North Carolina legislature and Supreme Court had clarified that willful and wanton conduct is a greater disregard of the duty of care than (and thus distinct from) gross negligence.[78] After listing the extensive allegations of warnings, subsequent approvals without critical information, and multiple deficiencies regarding the specific Loss Loans, the district court denied the motion to dismiss the claim of gross negligence.[79]

The D&Os then answered the Complaint, raising several affirmative defenses, including the defense of intervening cause, and alleging that the FDIC-Receiver had failed to mitigate its damages.

Following discovery, the FDIC-Receiver moved for partial summary judgment

---

[77] 882 F. Supp.2d at 865.

[78] *Id.*

[79] "[FDIC-Receiver's] complaint makes sufficient allegations. The complaint alleges that directors were repeatedly warned about regulatory violations and were advised that loans were being made in violation of the loan policy but took no action. The complaint also alleges that many loans were approved after an inappropriate level of review and that loans were approved without critical information such as ability to repay the loan and whether the bank was properly secured. The complaint further sets out multiple deficiencies with regard to each loan at issue, including improper structuring, insufficient repayment sources, inadequate or wrongly valued securities, loan policy violations, lack of feasibility studies, overstatement of value, insufficient underwriting, and insufficient appraisal bases." *Willetts*, 882 F. Supp.2d at 865.

on those affirmative defenses. At the same time, the D&Os moved for summary judgment on all claims of the FDIC-Receiver, arguing generally that the D&Os were victims of the "Great Recession." They further argued that they were insulated from liability for ordinary negligence by the business-judgment rule, and from gross negligence because there was no evidence that the D&Os acted willfully and wantonly. FDIC-Receiver opposed the D&Os motion, arguing that genuine issues of material fact existed that precluded summary judgment. Specifically, the FDIC-Receiver argued that the evidence would support a conclusion that the business-judgment rule did not protect these negligent actions. FDIC-Receiver also argued that intentional misconduct was not an element of gross negligence.

The district court granted the D&Os summary judgment, and denied the FDIC-Receiver's motion for partial summary judgment as moot. The court did not alter its earlier conclusion that D&Os can be held liable for ordinary negligence under North Carolina law,[80] but concluded that the business-judgment rule shielded the D&Os from liability for the claims of ordinary negligence and breach of fiduciary duty.

The court discussed the RoE-2006, focusing on the CAMELS grade of "2." The court held that the D&Os processes and practices for the Loss Loans were rational as a matter of law, and thus the FDIC-Receiver had not rebutted the first

---

[80] *See Willetts*, 882 F. Supp.2d at 863-64.

presumption of the business-judgment rule.

The district court also granted the D&Os summary judgment on the claim of gross negligence, holding that the FDIC-Receiver was obligated to show intentional misconduct and had failed to do so. Although the court had previously held that in North Carolina gross negligence did not require a showing of "willful and wanton" or intentional misconduct, and noted that this was consistent with 12 U.S.C. § 1821(k),[81] it now reversed itself. Having concluded that a showing of intentional misconduct was necessary to establish gross negligence, the court held that the FDIC had presented no evidence the D&Os engaged in "wanton conduct or consciously disregarded Cooperative's well-being," and granted summary judgment for the D&Os.[82]

The FDIC-Receiver filed this appeal.[83]

## SUMMARY OF ARGUMENT

Under federal law, the FDIC-Receiver can hold directors and officers of a failed bank liable and recover damages from them for their gross negligence and, in states like North Carolina with a higher standard of care, for ordinary negligence. North Carolina imposes by statute a duty of ordinary care on its directors and officers, and state law provides that such directors and officers can be held liable to

---

[81] *Id.*
[82] *Id.*
[83] JA 85.

the corporation for their negligence.  In considering claims of ordinary negligence,

North Carolina courts recognize a business-judgment rule, which creates a rebuttable

presumption that the D&Os have acted with due care.

Although North Carolina's Supreme Court has not defined the contours of

the state's business-judgment rule, decisions from other jurisdictions applying similar

state laws have held that the business-judgment rule cannot operate to elevate the

standard of liability to gross negligence.  Instead, the presumption under the rule can

be rebutted by showing a failure to exercise due care, particularly in the processes

employed in making decisions.  And even in jurisdictions with a more lenient

business-judgment rule like Delaware, which purports to apply a business-judgment

rule effectively establishing a gross negligence standard, the presumption can be

overcome by evidence from which a reasonable juror could conclude that the D&Os

did not act in good faith, or did not act on an informed basis. The evidence adduced

by the FDIC-Receiver overcomes the presumption of the business-judgment rule.

The D&Os here ignored ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████ From this evidence, a reasonable

juror could conclude that the D&Os did not act with due care in the loan-approval

process, or on an informed basis. Consequently, summary judgment on claims of

ordinary negligence is precluded by genuine issues of material fact.

The district court below applied Delaware's lenient business-judgment rule

and improperly held that the FDIC-Receiver could not overcome the presumptions

of the business-judgment rule. According to the court, "2" ratings by bank

examiners and general favorable comments by a bank consultant established that the

process used by the D&Os was rational as a matter of law. The court reached this

conclusion despite ████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████ In holding that the bank examination rating and general favorable

comments established that the process was rational as a matter of law, the district

court violated the fundamental tenet that on a motion for summary judgment, all

inferences must be drawn for the non-movant.

The district court also erred in granting summary judgment on claims of gross negligence by requiring the FDIC-Receiver to establish intentional wrongdoing by the D&Os. North Carolina's Supreme Court recently examined the issue, and concluded that intentional wrongdoing is not a necessary element of gross negligence. The FDIC-Receiver adduced evidence that the D&Os exhibited the heedless, reckless disregard for the Bank that constitutes gross negligence in North Carolina.

Finally, the D&Os' arguments that the Bank's chartering documents eliminated liability for negligence, and that the D&Os reasonably relied on bank officers, must fail. The liability-limiting provisions cannot eliminate liability for gross negligence, and the FDIC-Receiver has adduced evidence raising a disputed issue of material fact whether the D&Os acted in good faith, precluding summary judgment on claims of ordinary negligence. Similarly, there are disputed issues of material fact whether the D&Os reasonably relied on others when they made decisions without consulting any documentation, and reasonable reliance required the D&Os to read and consider any material upon which they claim reliance, and the evidence shows that they did not do so.

# ARGUMENT

## I.    Standard of Review

This Court reviews the district court's grant of summary judgment *de novo*.[84]

On review, this Court must view the facts and draw all inferences in favor of the non-moving party, the FDIC-Receiver.[85]  Summary judgment should only be rendered if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[86]

Questions of law are reviewed by this Court *de novo*.[87]

## II.    The District Court Erred by Entering Summary Judgment Because A Reasonable Juror Could Conclude From the Evidence That The Loan Approval Process Was Not Protected By The Business-Judgment Rule

Summary judgment for the D&Os must be reversed by this Court because there are genuine issues of material fact on whether the D&Os violated their duty of care and fiduciary duties and are not protected by a business-judgment rule.

### A. Directors and Officers May Be Held Personally Liable for Negligence Under Federal and North Carolina Law.

The FDIC's statute provides that a director or officer of an insured depository institution may be held personally liable for monetary damages in an action by the

---

[84] *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 283 (4th Cir. 2004).
[85] *See, e.g., Anderson v. Liberty Lobby,* 477 U.S. 242, 255 (1986); *Okoli v. City of Baltimore,* 648 F.3d 216, 220 (4th Cir. 2011).
[86] Fed.R.Civ.P. 56(c).
[87] *See Solis v. Malkani,* 638 F.3d 269, 275 (4th Cir. 2011); *United States v. Perrin,* 45 F.3d 869, 871 (4th Cir. 1995).

33

FDIC for gross negligence or ordinary negligence under applicable state law.  12

U.S.C. § 1821(k) provides:

> A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the [FDIC] * * * for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law.  Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

Section 1821(k) has been interpreted by the United States Supreme Court as

establishing "gross negligence" as the minimum standard of liability for directors and

officers of insured depository institutions which applies in the place of state

standards that are more relaxed: "[w]e conclude that state law sets the standard of

conduct so long as the state's standard (such as simple negligence) is stricter than that

of the federal statute. The federal statute nonetheless sets a 'gross negligence' floor,

which applies as a substitute for states' standards that are more relaxed."[88]

In deciding *Atherton*, the Supreme Court emphasized that Congress enacted

this provision in response to a rash of failures of savings associations, and the recent

changes in many states' laws that were designed to limit officer and director

negligence liability.[89]  The Court found that:

> The state-law changes would have made it more difficult for the Federal Government to recover, from negligent officers and directors, federal

---

[88] *Atherton*, 519 U.S. at 216.
[89] *Atherton*, 519 U.S. at 228.

funds spent to rescue failing savings banks and their depositors. And the background as a whole supports a reading of the statute as an effort to preserve the Federal Government's ability to recover funds by creating a standard of care floor.[90]

Because North Carolina *does* provide director and officer liability for both ordinary negligence and gross negligence, the FDIC may recover for damages caused by the D&Os' ordinary negligence.

In this action involving North Carolina law, this Court's function, as in diversity cases, "is to predict what the Supreme Court of North Carolina would decide were the determinative issue presented to it."[91]  In doing so, the Court may consider statutes relevant to the issue, and is not bound by a state trial-court decision on matters of state law.[92]  While this Court usually may certify such state law questions to the highest court of a state, it is unable to do so here because North Carolina has no mechanism by which this Court may certify such questions.[93] Consequently, this Court must attempt to determine how the Supreme Court of North Carolina would decide the issue.[94]

---

[90] *Id., accord FDIC v. Canfield*, 967 F.2d 443, 447 (10th Cir. 1992) (Section 1821(k) limits the ability of the states to insulate officers and directors of federally insured institutions from liability for gross negligence or acts of greater culpability).

[91] *See, generally, FDIC v. Skow*, 741 F.3d 1342 (11th Cir. 2013) (determining state-law business-judgment rule); *FDIC v. Gravee*, 966 F.Supp. 622 (N.D. Ill. 1997) (looking to state law for concept of gross negligence under Section 1821(k)).

[92] T*win City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co.*, 433 F.3d 365, 370 (4th Cir. 2005); *Doe v. Doe*, 973 F.2d 237, 242 (4th Cir. 1992).

[93] *See Town of Nags Head v. Toloczko*, 728 F.3d 391, 398 (4th Cir. 2013).

[94] *See McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 328 (4th Cir. 1996).

In North Carolina, officers and directors of corporations must discharge their duties (1) in good faith; (2) with the care an ordinary prudent person in a like position would exercise under similar circumstances; and (3) in a manner he reasonably believes to be in the best interests of the corporation.  N.C.G.S. §§ 55-8-30; 55-8-42.  Under that statute, a director or officer is not liable "*if* he performed the duties of his office in compliance with this section" (emphasis added).[95]

The statute is a codification of the law in North Carolina prior to enactment of the statute.[96]  North Carolina has long held that directors and officers are liable to the *corporation* for their negligence, not to third parties.[97]  And the North Carolina Supreme Court and lower courts have also recognized that a heightened standard of care is owed by North Carolina bank directors and officers.  Such a heightened standard is consistent with the statutory standard of "care an ordinary prudent

---

[95] Some states, unlike North Carolina, explicitly provide a different standard of liability than the statutory standard of care.  *See, e.g.* Ind. Code Ann. §§ 23-1-35-1(e)(2), 28-13-11-5(a)(2);  Me. Rev. Stat. tit. 13-C, §§ 832(1)(B), 843(3).

[96] *See Willetts*, 882 F. Supp.2d at 863 (discussing statute and state of law prior to enactment).

[97] *See North Carolina Corp. Comm. V. Hartnett Cnty. Trust Co.,* 134 S.E. 656 (1926) (directors and officers liable for "negligent failure to perform their duties"); *Gordon* v. *Pendleton*, 162 S.E. 546 (N.C. 1932) (bank director potentially liable for failure to observe duty of ordinary care); Russell M. Robinson, *Robinson on North Carolina Corporation Law* § 14.08 (7th ed. 2009) (liability exists to the corporation, but not to third parties).

person *in a like position* would exercise *under similar* circumstances" (emphasis added).[98]

As in many jurisdictions, North Carolina courts have adopted a "business-judgment rule," which creates a *rebuttable* presumption that directors have acted with due care (*i.e.* on an informed basis).[99] The North Carolina Supreme Court has not addressed the business-judgment rule nor discussed its contours or operation, either with respect to corporate directors and officers or with respect to *bank* directors and officers, who operate under a heightened standard of care.

In jurisdictions whose ordinary negligence standard is established by statute (like North Carolina), rather than exclusively by the courts (like Delaware), the courts have rejected the argument that a business-judgment rule could effectively negate the statutory duty of care, or foreclose claims of ordinary negligence and insulate directors and officers from all but gross negligence. Those jurisdictions recognize that any business-judgment rule presupposes the exercise of ordinary

---

[98] *See Lillian Knitting Mills Co. v. Earle*, 74 S.E.2d 351, 355 (N.C. 1953) (rule with respect to liability of bank officers distinct from that of other corporations); *State v. Custard*, 2010 N.C.B.C. 6, 2010 WL 1035809, at *19 (N.C. Super., March 19, 2010) ("under North Carolina law a director of a bank might be held to a higher standard of care than a director of another business."); *Robinson*, § 14.03 [1].

[99] *Alford v. Shaw*, 349 S.E.2d 41, 53 (N.C. 1986); *State v. Custard*, 2010 N.C.B.C. 6, 2010 WL 1035809 (N.C. Super. March 19, 2010); *Green v. Condra*, 2009 N.C.B.C. 21, 2009 WL 2488930 (N.C. Super. August 14, 2009).

care.[100]  Some of those courts reconcile the business-judgment rule and the statutory standard of ordinary care by providing that the business-judgment rule's presumption in favor of a director or officer can be overcome where the evidence shows that, with respect to the *process* by which a director or officer made a decision, the director or officer failed to exercise *ordinary* care, *i.e.* the diligence, care, and skill of "ordinarily prudent men [acting] under similar circumstances in like positions."[101]  These courts focus on the process employed by directors and officers used to make a decision, rather than the ultimate outcome and wisdom of the decision, to avoid second-guessing the business judgment of the director or officer while still enforcing the standard of care established by the legislature.[102]  The business-judgment rule will preclude claims of negligence "when the alleged negligence concerns only the wisdom of their judgment, but it does not absolutely foreclose such claims to the extent that a business decision did not involve 'judgment' because it was made in a way that did not comport with the duty to exercise good faith and ordinary care."[103]

---

[100] *See FDIC v. Stahl*, 89 F.3d 1510, 1517 (11th Cir. 1996)("When courts say that they will not interfere in matters of business judgment, it is presupposed that judgment-reasonable diligence-has in fact been exercised (internal citation omitted).")

[101] *FDIC v. Skow*, 763 S.E.2d 879, 881 (Ga. 2014); *FDIC v. Loudermilk*, 761 S.E.2d 332, 339 (Ga. 2014).  The *Skow* and *Loudermilk* opinions were issued after briefing below was completed.

[102] *Id.*

[103] *Loudermilk*, 761 S.E.2d at 338.  *See RTC v. Bernard*, 1995 WL 17164886, *12 (M.D.N.C.)(noting that North Carolina authorities, including the Court of (cont.)

Courts to consider a statute like North Carolina's have unanimously concluded that insulating a director from anything but gross negligence impermissibly alters the statutory standard of care.[104] For instance, the Eleventh Circuit analyzed a functionally identical statute in *FDIC v. Stahl*, and rejected the argument that a business judgment rule requires a showing of gross negligence notwithstanding the language of the statute.[105] Such a reading "completely ignore[s] the threshold requirement of the exercise of ordinary care under" the statute.[106] This rule, requiring due care in the process, should be applied by this Court consistent with North Carolina's statutory standard of care.

---

(cont.) Appeals, have held that the business-judgment rule "protects corporate directors from being judicially second guessed *when they exercise reasonable care and business judgment*" (emphasis in *Bernard*)).

[104] *See, e.g., Stahl*, 89 F.3d at 1518 ("The court-made BJR does not change Florida's pre-1987 statutory simple negligence standard to a gross negligence standard; it merely protects directors who exercised reasonable diligence in the first instance from liability on the merits of their business judgment, unless they acted fraudulently, illegally, oppressively, or in bad faith."); *Hoye v. Meek*, 795 F.2d 893, 896 (10th Cir. 1986) ("Assuming appellant's good faith, that alone was not sufficient to shield him from liability. . . . [because good faith] was not sufficient to fulfill his duty of care as a director and president. The Oklahoma statute requires good faith *and* the diligence, care and skill of a prudent man."); *Shields v. Cape Fox Corp.*, 42 P.3d 1083, 1091-92 (Al. 2002); *RTC v. Heiserman*, 839 F.Supp. 1457, 1463-64 (D. Colo. 1993)(implicitly overruled on other grounds); *Bernard*, 1995 WL 17164886, *12.

[105] *Stahl*, 89 F.3d at 1517. Prior to reversing itself, the district court reached a conclusion consistent with *Stahl*. The district court cited North Carolina's statute and found "no basis upon which to presume that the North Carolina legislature . . . mirrored the language of the law's ordinary negligence standard so closely when it instead meant to impose only a gross negligence standard[.]" 882 F. Supp.2d at 867.

[106] *Id.*

The district court relied on an unreported North Carolina decision that did not focus on the statute, but instead adopted the test employed by Delaware courts. That decision holds that a director or officer cannot be held liable — even for a reckless, stupid, or irrational decision — when the process employed was either rational or employed in good faith to advance corporate interests.[107] This has been described by two North Carolina trial courts, in unreported decisions, as establishing a "gross negligence" standard, and Delaware has described it as "grounded in concepts" of gross negligence. Under this business-judgment rule, the presumption favoring the director or officer can be rebutted by a showing that the defendants did not act in good faith, did not act on an informed basis, or did not reasonably believe that their actions were in the best interest of the Bank. However, where a state, such as North Carolina, has established a statutory duty of ordinary care, a court may not apply a common-law business-judgment rule to preclude a plaintiff from introducing evidence to overcome the presumption of *ordinary care*, nor can it require proof of gross negligence. This would impermissibly conflict with the statutory standard of care.[108] But under any formulation of the business-judgment rule, "summary

---

[107] *Custard*, 2010 WL 1035809, at *21, *quoting In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967-68 (D.Ch. 1996).

[108] *FDIC v. Loudermilk*, 761 S.E.2d at 343; *Stahl*, 89 F.3d at 1517 (requiring a showing of gross negligence "completely ignore[s] the threshold requirement of the exercise of ordinary care under" the statute); *Hoye*, 795 F.2d at 896 ("Assuming appellant's good faith, that alone was not sufficient to shield him from liability. . . . The Oklahoma statute requires good faith *and* the diligence, care and skill of (cont.)

judgment cannot be granted on the basis of the business judgment rule" where the evidence casts doubt on the defendant's good faith, informed action, or actions in the best interest of the corporation.[109]

Allowing a business-judgment rule to effectively elevate the standard of care to gross negligence impermissibly rewrites the statute, and would not be accepted by the North Carolina Supreme Court. Courts are "not free to either ignore or amend legislative enactments because when the language of a statute is clear and unambiguous, the courts must give it its plain meaning."[110]

Under the appropriate business judgment rule, requiring D&Os to demonstrate that they conformed to the duty of care — or even under Delaware's more expansive law insulating directors and officers if their process was "rational" — the D&Os are not entitled to summary judgment. Under any presumption, director and officer conduct falls outside the protection of the business-judgment rule if the evidence supports the conclusion that either the D&Os did not act in good faith, or they did not take adequate measures to inform themselves about the decisions that

---

(cont.) a prudent man."). *See RTC v. Bernard,* 1995 WL 17164886, at *12 ("the business judgment rule and liability for ordinary negligence are not mutually exclusive. North Carolina courts have noted that, to some extent, application of the business judgment rule presupposes the exercise of reasonable care in reaching the business decision at issue").

[109] *Blythe v. Bell,* 2013 N.C.B.C. 7, 2013 WL 440701, at *14 (N.C. Super. Ct. February 4, 2013).

[110] *State ex rel. Utilities Commission v. Edmisten,* 232 S.E.2d 184, 192 (N.C. 1977).

form the basis of the lawsuit against them.[111]   And even Delaware courts have

conceded that "good faith" approvals made without reviewing key documents, or

demonstrating a "we don't care about the risks" attitude, fall outside the protection

of the business-judgment rule.[112]   Moreover, the breach of the duty of loyalty, *i.e.* the

lack of good faith, is not limited to circumstances involving fraud, self-dealing, or

conflict of interest.[113]   Directors have a duty to "(1) act in the best interests of those to

whom a fiduciary duty is owed, and (2) to try in good faith to perform [their] duties

with care."[114]   "The question of good faith is one of fact to be resolved by the jury. . .

."[115]

The FDIC-Receiver overcame the initial presumption of the business-

judgment rule by presenting evidence from which a reasonable juror could not only

conclude that the D&Os did not exercise due care in the process of approving the

Loss Loans, but could also conclude that the D&Os did not act in good faith, and

did not act on an informed basis.  As discussed in the statement of facts and

demonstrated below, the evidence is sufficient for a reasonable juror to conclude

that the D&Os did not employ a rational process in approving the Loss Loans, and

---

[111] *In re Walt Disney Co. Derivative Litigation,* 825 A.2d 275, 286 (Del.Ch. 2003).
[112] *Disney,* 825 A.2d at 287-89.
[113] *Custard,* 2010 WL 1035809, at *19.
[114] *Id.*
[115] *Embree Const. Group v. Rafcor, Inc.,* 411 S.E.2d 916, 925 (N.C. 1992).

did not avail themselves of all material and reasonably available information prior to approving the Loss Loans.

### B. The FDIC-Receiver Presented Evidence Creating a Genuine Issue of Fact Whether the D&Os Acted in Good Faith or Adequately Informed Themselves About the Loss Loans They Approved.

The evidence adduced by the FDIC-Receiver creates a genuine issue of material fact whether the actions of the D&Os in approving the Loss Loans were entitled to the protections of the business-judgment rule, precluding the summary judgment improperly entered for the D&Os.[116] Specifically, the evidence raises genuine issues of fact whether the D&Os' relevant acts were taken in good faith and whether the D&Os availed themselves of all material and reasonably available information in making the decision.[117]

---

[116] *Disney*, 825 A.2d at 286.
[117] *Embree*, 411 S.E.2d at 925.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████

Notwithstanding the D&Os' knowledge of all of these deficiencies and risks, the record is replete with evidence ████████████████████████ ████████████████████████████████████████ ███████████████████████████████████ ████████████████████████████████████ ██████████████████████████████ A director or officer is not entitled to the protection of the business-judgment rule where he "did not act in the best interests of those to whom a fiduciary duty is owed," or "try in good faith to perform [their] duties with care."[119] █████████████████████████████ ███████████████████████████████████████ ██████████████████████████████████ ████████████████████████████████████ ████████████████████████████████

---

[118] JA ████████.
[119] *Custard*, 2010 WL 1035809, at *19.
[120] JA 583-586 (emphasis added).

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

From this evidence, a reasonable juror could conclude that the D&Os did not "act in the best interests of those to whom a fiduciary duty is owed," and certainly did not act with due care.  Consequently, there were disputed issues of material fact regarding whether the D&Os were entitled to the protection of the business-judgment rule.[123]  Such a determination is one that a jury should have made, and summary judgment was improper.[124]

Similarly, summary judgment should have been denied because whether the D&Os adequately informed themselves and employed a "rational process" in approving the Loss Loans were disputed issues of material fact.  ███████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

---

[121] JA ████.
[122] JA ████.
[123] *Custard*, 2010 WL 1035809 *19.
[124] *Embree*, 411 S.E.2d at 925.
[125] JA ███████.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████

Lending decisions made without reviewing key documents fall outside the protection of the business-judgment rule.[128]  A reasonable juror could conclude from the evidence that the D&Os did not avail themselves of all material and reasonably available information prior to approving the Loss Loans.  Nor did they employ a diligent, rational process prior to approving the Loss Loans.  To be sure, FDIC-Receiver does not argue that its evidence *must* be believed or that, if believed, *must* yield an inference that the D&Os' process in approving the loans was irrational.  But because FDIC-Receiver's evidence *may* be believed and *may* yield such an inference, the D&Os are not entitled to summary judgment.[129]  This Court should not join the district court in improperly wresting the factual determination from the jury, but should reverse the order of summary judgment and remand this case for trial.

### C. The District Court Erred By Determining That Regulatory Examination Ratings And General Comments From the Consultant Rendered the D&Os' Process Rational As A Matter of Law.

---

[126] ████████████████████

[127] ██████████

[128] *Disney*, 825 A.2d at 287-88.

[129] *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 301 (4th Cir. 2010).

The district court erred by holding that the processes by which the D&Os approved the Loss Loans was rational as a matter of law. The court held that in the RoE-2006 "[t]he regulators assigned defendants a passing grade of "2". . . and to now argue that the process behind the loans is irrational is absurd."[130] The court went on to note that the Bank's consultant, CRM, had independently concluded that "extensive underwriting is performed at loan inception" and that the Bank's credit memoranda adequately articulated the process–without crediting evidence that CRM advised the D&Os of significant problems.[131] Without benefit of any authority, the court effectively established a rule that any subsequent managerial decisions following a "2" rating are *per se* rational. According to the court, "the facts show that the process that the defendants used to make the challenged loans were [*sic*] expressly reviewed, addressed, and graded by FDIC regulators in the 2006 ROE." However, the court ignored what the RoE-2006 *actually said*, and impermissibly drew all inferences in favor of the D&Os when conflicting inferences were possible, which made summary judgment improper.

The RoE-2006 undeniably contained composite and component ratings of "2," but contained much more than that. ███████████████████████

████████████████████████████████████████████

---

[130] JA 78.
[131] *Id.*



This Court must "draw *any* permissible inference from the underlying facts in the light most favorable to the party opposing the motion," and the inferences to be

---

[132] JA ▮
[133] *Id.* (emphasis added).
[134] JA ▮

drawn from the evidence are not drawn in a vacuum, but reflect the context in which the facts occur.[135] A competing inference could reasonably be drawn by a juror that the D&Os' approval process for the Loss Loans – ██████████████████ ████████████████████████████████████ ███████████ – was not in the Bank's best interests and was not rational. The evidence supports a conclusion that the decisions that resulted from the uncorrected approval practices were not informed decisions. Simply put, the district court impermissibly drew only one inference from a document that supports others, and impermissibly drew the inference *against* the FDIC-Receiver. Accordingly, summary judgment must be reversed.

### III.   Summary Judgment Was Improper Where A Reasonable Juror Could Conclude From the Evidence That The D&Os were Grossly Negligent.

In North Carolina, the question of whether gross negligence occurred is a question of fact for the jury.[136] What constitutes gross negligence is a question of law, and the district court erred below in holding that gross negligence in North Carolina requires intentional wrongdoing by the tortfeasor.

### A. Gross Negligence in North Carolina Does Not Require Intentional Wrongdoing.

---

[135] *Tuck v. Henkel Corp.,* 973 F.2d 371, 374 (4th Cir. 1992) (emphasis added); *Sylvia Development Corp. v. Calvert Cty,* 48 F.3d 810, 818 (4ᵗʰ Cir. 1995).
[136] *Clayton v. Branson,* 570 S.E.2d 253, 256 (N.C. App. 2002).

Summary judgment in this case must be reversed because the FDIC-Receiver presented evidence creating a genuine issue of fact whether the D&O's were grossly negligent when they ignored warnings, prudent banking practices, and legal limits, and made the Loss Loans anyway. The district court's conclusion that summary judgment was proper because the FDIC-Receiver adduced no evidence of intentional misconduct is wrong. North Carolina does not require proof of intentional wrongdoing as an element of a claim that a bank director or officer has been grossly negligent. In the *Jones v. City of Durham* decision, the North Carolina Supreme Court explicitly considered whether gross negligence requires intentional (*i.e.* "willful and wanton") misconduct, and the North Carolina Supreme Court held:

> 'willful and wanton conduct' . . . is more than gross negligence. . . . [W]hile willful and wanton conduct includes gross negligence, gross negligence may be found even where a party's conduct does not rise to the level of deliberate or conscious action implied in the combined terms of "willful and wanton.""[137]

The court acknowledged that its

> previous decisions have conflated actions done with wicked purpose with actions done while manifesting a reckless indifference to the rights and safety of others under the rubric of "gross negligence," (but) we conclude that the General Assembly intended to distinguish these two types of action."[138]

---

[137] *Jones v. City of Durham,* 622 S.E.2d 596, 600 (N.C. 2005), *superseded and withdrawn on other grounds, Jones v. City of Durham,* 638 S.E.2d 202 (N.C. 2006).
[138] *Id.*

Under this correct statement of North Carolina law, the district court erred in granting summary judgment premised on a lack of evidence of intentional misconduct.

Here, the district court's mistaken holding that intentional misconduct is required to show gross negligence was a departure from its earlier decision denying a motion to dismiss, in which the court held that intentional misconduct was *not* required. The court held that "both the General Assembly and the Supreme Court of North Carolina have clarified the difference between 'gross negligence' and 'willful and wanton conduct.'" The district court duly applied *Jones*, noting that the *Jones* opinion had been "withdrawn and superceded [*sic*] on *other grounds*."[139] The court's only rationale for changing its mind in the decision granting summary judgment that *required* "willful and wanton conduct" was a footnote that its earlier reliance on *Jones* "was misplaced as the North Carolina Supreme Court withdrew the *Jones* opinion," and an assertion that a subsequent appeals court decision had defined gross negligence "in its traditional terms."[140]

*Jones* correctly states North Carolina law. The *Jones* analysis–that gross negligence was less than willful and wanton conduct involving a deliberate act–was not questioned by a single justice of the North Carolina Supreme Court. Indeed, two dissenting justices argued for an even broader definition of gross negligence than

---

[139] *Willetts*, 882 F. Supp.2d at 865 (emphasis added).
[140] *Id.*, *citing Greene v. City of Greenville,* 736 S.E.2d 833 (N.C. App. 2013),

51

the one employed by the majority. The *Jones* opinion was withdrawn because, on reconsideration, the Supreme Court concluded that a dissenting judge below had identified sufficient facts in the record to defeat summary judgment. Consequently, the Supreme Court withdrew its opinion. Nothing in the order withdrawing the opinion or in the superseding opinion reconsiders or addresses the elements of gross negligence.[141]

There is additional support for applying the *Jones* definition of gross negligence in this case. *First,* "[t]he primary legal indicators [for federal courts determining state law] should be what the courts of the state have most recently *said,"* and on this issue, *Jones* is the most recent Supreme Court decision, and it explicitly reviewed and clarified its earlier decisions.[142] *Second,* the *Jones* holding was premised on the Supreme Court's understanding that the General Assembly, in two statutes that remain the law in North Carolina, had distinguished gross negligence from intentional or deliberate misconduct. The statutory predicate for the *Jones* holding remains unchanged.

*Third,* the definition of gross negligence as "less than" intentional conduct is consistent with Section 1821(k) and the federal "floor" of gross negligence. As the

---

[141] *Jones,* 622 S.E.2d at 146.
[142] *Martin v. Volkswagen of America, Inc.,* 707 F.2d 823, 825 (4th Cir. 1983)(emphasis in original). The district court's reliance on *Greene,* ostensibly to demonstrate that the North Carolina courts have disregarded *Jones,* is misplaced. The court in *Greene* did not consider whether intentional conduct is an element of gross negligence and did not refer to or discuss *Jones.*

52

district court stated (in its earlier order holding that intentional misconduct need not be shown): "the plain language of § 1821(k) indicates that intentional conduct constitutes a greater disregard for the duty of care than gross negligence."[143] As the U.S. Supreme Court held, Section 1821(k) prohibits courts from applying a more "relaxed" standard than "gross negligence."[144] A state-law definition of gross negligence that requires proof of intentional conduct conflicts with the language and purpose of Section 1821(k). But this conflict is avoided if the definition of "gross negligence" is interpreted so that intentional misconduct is not an element of gross negligence in North Carolina, a result that is consistent with the North Carolina Supreme Court's decision in *Jones*.

### B. Summary Judgment Must Be Reversed Because the FDIC-Receiver Adduced Facts From Which A Reasonable Juror Could Conclude the D&Os Were Grossly Negligent.

Because the North Carolina Supreme Court clarified that its earlier decisions conflating gross negligence with willful and wanton conduct were wrong, and that gross negligence does not require intentional or deliberate misconduct, the FDIC-Receiver's proffered evidence is more than enough to defeat summary judgment. Gross negligence includes conduct " 'done needlessly, manifesting a *reckless*

---

[143] *Willetts*, 882 F. Supp.2d at 865.
[144] *Atherton*, 519 U.S. at 216; *FDIC v. Giannoulias*, 918 F.Supp.2d 768, 771 (N.D. Ill. 2013) (court resolved "serious doubts about whether it is permissible to borrow from state law a definition of 'gross negligence' that effectively raises the standard of culpability to recklessness" by applying state-law cases providing a lesser standard of gross negligence consistent with the statute).

*indifference* to the rights of others.' "[145]



. From these and the other facts adduced by the FDIC-Receiver (detailed above in the Statement of Facts), a reasonable juror could conclude that the D&Os were recklessly indifferent to the harm caused to the Bank, and were grossly negligent in approving the Loss Loans.

## IV.    The D&Os' Other Arguments For Summary Judgment Also Fail Because Disputed Issues of Fact Remain.

The D&Os' remaining arguments for summary judgment, not ruled on by the district court, must fail for substantially the same reason: genuine issues of material fact are in dispute that preclude summary judgment.

### A. The "Elimination of Liability" Clauses Do Not Support Summary Judgment.

---

[145] *Parish v. Hill,* 513 S.E.2d 547, 551–52 (N.C. 1999), *quoted in Wagoner v. North Carolina R. Co.,* 77 S.E.2d 701, 705 (N.C. 1953)(emphasis added).

[146] ███████.

North Carolina law provides that a corporation may include in its Articles of Incorporation a provision limiting or eliminating the personal liability of directors (but not officers) of the breach of any duty.[147]  Cooperative Bank included such a provision in its chartering documents, and the D&Os contend that they therefore are entitled to summary judgment.  Summary judgment is precluded by disputed issues of material fact.

"Elimination of liability" clauses have no application under North Carolina law where a director knew or believed that his acts or omissions were clearly in conflict with the best interests of the corporation.  The statute does not permit elimination of liability for directors' breaches of the duties of loyalty or good faith.[148]  Acts or omissions that were not in good faith - actions harmful to the corporation and decisions made without adequate information - are not entitled to exculpation.  Nor do elimination-of-liability clauses apply to gross negligence or to violations of banking law.[149]  Because the FDIC-Receiver has adduced summary judgment evidence from which a juror could conclude that the directors did not act in good faith and acted without adequate information, summary judgment based on the exculpation provision is unavailable.

---

[147] N.C.G.S. 55-2-02(b)(3).

[148] *Id.*

[149] *Atherton*, 12 U.S.C. § 1821(k) (under statute, directors must meet a gross negligence standard of care).  The FDIC-Receiver has offered evidence of violations of the Bank's legal lending limit, which would not be subject to exculpation.

Similarly, the D&Os "reasonable reliance" defense requires resolution of disputed issues of material fact. N.C.G.S. § 55-8-30(b)(1) permits directors to rely on the advice of officers and employees only if they "reasonably believe" the officers and employees are "reliable and competent in the matters presented." N.C.G.S. § 55-8-42(b)(1) similarly requires that an officer's reliance on the advice of other officers and employees must be "reasonable." Both statutes also provide that reliance is not permitted when the director or officer has knowledge of matters that make reliance unwarranted.[150]

In the leading treatise on North Carolina corporate law, Robinson describes the requirements of and limitations on the "reasonable reliance" defense in pertinent part as follows:

> These requirements of reasonable belief impose a duty of good faith and reasonable inquiry, so that **a director must, for example, actually read and consider any material upon which he claims reliance and must not ignore anything that would cause doubts about the reliance.** Obviously, a director would not be acting in good faith if he claimed reliance with actual knowledge that it was unwarranted, so the statute expressly makes it unavailable in such a case. Similarly, a reliance defense might be unavailable to a director who ignored expert advice that was contrary to his action.

*Robinson on North Carolina Corporation Law* § 14.05 (Emphasis added).

██████████████████████████████████████████

---

[150] N.C.G.S. §§ 55-8-30(c), 55-8-42(c).





. Where, as here, a reasonable jury could find for the FDIC-Receiver, the issue of "reasonable reliance" is not appropriate for summary judgment.[155]

### B. Because Summary Judgment Was Improper, the FDIC-Receiver's Motions for Partial Summary Judgment and to Strike Are Not Moot.

Because summary judgment for the D&Os must be reversed, the FDIC-Receiver's motions for partial summary judgment and to strike the testimony of the D&Os' expert witness are not moot. Accordingly, this Court should order the district court to consider those motions on the merits.

## CONCLUSION

For the foregoing reasons, the district court's rulings on the questions presented on appeal should be reversed, and this case should be remanded for consideration of the FDIC-Receiver's motions for partial summary judgment and to strike testimony, and for trial.

---

[154] JA █

[155] *See Johnson v. Lockman*, 254 S.E.2d 187, 191 (1979) ("reasonable reliance is a question for the jury"); *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 513 S.E.2d 320, 327 (1999) (quoting *Olivetti Corp. v. Ames Bus. Sys., Inc.*, 356 S.E.2d 578, 584 (1987))("the question of whether an actor is reasonable in relying on the representations of another is a matter for the finder of fact").

## STATEMENT REGARDING ORAL ARGUMENT

The FDIC-Receiver respectfully requests oral argument.  At issue in this appeal are: (1) whether the district court, considering all of the evidence for trial, improperly drew inferences against the FDIC-Receiver and determined as a matter of law that the business-judgment rule under North Carolina insulated the D&Os from liability for ordinary negligence, and therefore the FDIC-Receiver could not proceed on its causes of action for ordinary negligence; and (2) whether the district court applied the wrong standard for determining gross negligence by improperly requiring the FDIC-Receiver to demonstrate intentional misconduct by the D&Os. The FDIC-Receiver believes oral argument would help to clarify the legal issues and appellate record and assist the Court's resolution of this appeal.

Respectfully submitted,

Colleen J. Boles
Assistant General Counsel
Kathryn R. Norcross
Senior Counsel

/s/James Scott Watson
James Scott Watson
Counsel
Steven C. Morrison
Counsel

Federal Deposit Insurance
Corporation
3501 Fairfax Drive, VS-D7176
Arlington, VA 22226-3500
(703) 562-2049

Mary L. Wolff
Douglas A. Black
Wolff Ardis, P.C.
5810 Shelby Oaks Drive
Memphis, Tennessee 38134
(901) 763-3336

*Attorneys for FDIC-Receiver*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 14-2078

*FDIC as Receiver for Cooperative Bank v. Rippy, et al.*

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)

Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or
   32(a)(7)(B) because:

   [✔] this brief contains **13,991** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ] this brief uses a monospaced typeface and contains [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✔] this brief has been prepared in a proportionally spaced typeface using **Microsoft Word 2010** in **14-point Baskerville Old Face** type; or

[ ] this brief has been prepared in a monospaced typeface using [*identify word processing program*] in [*identify font size and type style*].

/s/ James Scott Watson
Attorney for FDIC as Receiver for Cooperative Bank, Appellant

Dated: 17 December 2014

## Certificate of Service

I certify that on **December 17, 2014**, the foregoing document filed under seal was served on all parties or their counsel of record by serving a true and correct copy at the addresses listed below:

Thomas E. Gilbertsen
Ronald R. Glancz
VENABLE, LLP
575 7th Street, N.W.
Washington, D.C. 20004

Camden R. Webb
WILLIAMS MULLEN
P.O. Box 1000
Raleigh, North Carolina 27602

/s/ James Scott Watson